IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| MURRAY C. TURKA, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTH CAROLINA PUBLIC SERVICE AUTHORITY and LONNIE N. CARTER,<br><br>Defendants. | Civil Action No. 2:19-cv-1102-RMG<br><br>**SANTEE COOPER AND LONNIE CARTER'S REPLY IN SUPPORT OF MOTION TO DISMISS** |

Defendants Santee Cooper[1] and Lonnie N. Carter submit this Reply in support of their Motion to Dismiss the Complaint.

Rather than supporting his claims, the arguments in Plaintiff's Opposition to Santee Cooper and Lonnie Carter's Motion to Dismiss ("Opposition" or "Opp.") illustrate exactly why Plaintiff's claims should be dismissed. Plaintiff repeatedly declines to even attempt to respond to Defendants' legal arguments regarding the pleading requirements in securities fraud cases in the Fourth Circuit. Instead, Plaintiff consistently rests on his factual theory that Santee Cooper's alleged acts in the construction of the Project must, someway, somehow, have also constituted securities fraud. Yet, Plaintiff fails to adequately allege *any* of the elements of his securities fraud claims and his "hoping and praying" that he will not suffer any loss in the future is insufficient to state a securities fraud claim. (*See* Opp. at 30.) In fact, Congress enacted the PSLRA to prevent unwarranted and abusive securities cases such as this one (*i.e.*, those based on

---

[1] All defined terms not otherwise defined herein have the same meaning ascribed to them in Santee Cooper and Lonnie Carter's Memorandum in Support of Motion to Dismiss (the "Motion").

1

hopes and prayers) from proceeding past the pleadings stage. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (stating that the PSLRA's "twin goals" were "to curb frivolous, lawyer-driven litigation while preserving investors' ability to recover on meritorious claims").

As a preliminary matter, Plaintiff's claims are significantly narrowed by two concessions in the Opposition.

- *Concession 1*: Plaintiff concedes that he is alleging that only the Risk Mitigation Paragraph is false and misleading—not the Risk Factors Paragraph. (Opp. at 18 ("The Complaint alleges that the following statement in the Official Statements was materially false and misleading when made: [Risk Mitigation Paragraph].").)

- *Concession 2*: Plaintiff's claims are further narrowed by his complete failure to address Defendants' argument that Plaintiff lacks standing to assert claims in connection with the purchase of the 2015 and 2016 Mini-Bonds. As a matter of law, Plaintiff does not have class standing to assert Rule 10b–5 claims in connection with the 2015 and 2016 Mini-Bonds and can *only* premise his 2014 Mini-Bond claims on alleged misrepresentations or omissions that occurred before he purchased his 2014 Mini-Bonds on June 1, 2014. Now, he has waived any argument to the contrary.

Plaintiff's substantive arguments in the Opposition evidence the fatal flaws in his claims and the resulting desperation to try to save those claims. Indeed, Plaintiff sees the writing on the wall and preemptively requests that the Court grant him leave to amend any pleading deficiencies.

*First*, with respect to nearly every element of securities fraud, Plaintiff argues that courts should not decide the legal sufficiency of a plaintiff's allegations at the motion to dismiss stage and should instead allow every case to go to a jury. (*See* Opp. at 17 (falsity), 18 (materiality), 23 n.3 (reliance), 31 (loss causation).) This, of course, would fly in the face of decades of federal securities case law and Congress's express intent in enacting the heightened pleading standards in the PSLRA.

*Second*, Plaintiff invents new and unrecognized theories to support his deficient claims, including an entirely new theory of reliance, without citing any case law in support.

*Third*, Plaintiff attempts to support the falsity, materiality, and scienter elements of his Rule 10b–5 claims by relying on alleged omissions that do not relate at all to the oversight of the Project—the subject of the only alleged misstatement in this case. Those alleged omissions are far too attenuated to be actionable.

*Finally*, Plaintiff fails to address the overwhelming majority of the cases Defendants cited in their Motion.

This Court should dismiss Plaintiff's securities fraud claims and deny Plaintiff's request for leave to replead because any attempt to do so would be futile.

## ARGUMENT

### I.     The Complaint Fails to Adequately Plead Reliance.

Recognizing the critical defects in his reliance allegations, Plaintiff throws a Hail Mary, inventing an entirely new theory of reliance unknown to any court in the country. In effect, Plaintiff wants the inferences supported by an indirect reliance theory without having to plead the facts necessary to reach those inferences. Plaintiff's reliance theory is legally and factually baseless, and his securities fraud claims must be dismissed.

As Defendants argued in their Motion, Plaintiff cannot allege indirect reliance under the limited theories recognized by established precedent because the fraud-on-the-market theory is inapplicable. (*See* Motion at 23–24.) However, Plaintiff also cannot proceed on a direct reliance theory. The only allegation in the Complaint at all suggestive of a claim of direct reliance—that Plaintiff relied upon "the price of the securities, the integrity of the market for securities, and/or upon statements disseminated by Defendants"—is a conclusory allegation insufficient to meet

3

the Rule 9(b) pleading standard.[2] (*See* Motion at 21.)  Strategically, Plaintiff does not want to proceed on a direct reliance theory as that would effectively mandate dismissal of his putative class action because in direct reliance cases each putative class member must prove reliance individually and that common issues do not predominate over individual ones.  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014) ("[r]equiring proof of individualized reliance" from every securities fraud plaintiff "effectively would . . . prevent [ ] [plaintiffs] from proceeding with a class action").

As a result, in an attempt to avoid dismissal, Plaintiff comes up with an entirely new theory of reliance, untested in any court, unsupported by any case law, and unsupported by allegations in the Complaint.  He argues that "it is impossible, given the nature of the sales of the Mini-Bonds directly from Santee Cooper (due to the restricted nature of the securities and that they were not traded on securities exchanges), for purchasers to **not** have relied on the Official Statements . . . ."  (Opp. at 23 (emphasis in original).)  Although Plaintiff labels his new theory "direct reliance," the more appropriate label would be an implied direct reliance theory—a theory of reliance which is not recognized by any court.

As a threshold matter, Plaintiff's reliance theory is illogical.  Plaintiff asks the Court to believe that it would be "impossible" to get information on the "pricing and return rates for the Mini-Bonds" *without* reading the Official Statements.  However, Santee Cooper advertised that potential investors could call or email (in addition to going to a website) for more information on purchasing the bonds.  *See, e.g.*, THE STATE, April 20, 2014, at D4 (advertising 2014 Mini-Bonds

---

[2] Allegations of reliance must meet the heightened pleading standards under Rule 9(b).  *Xia B.*, 927 F.3d at 184.  "Rule 9(b) itself provides that 'a party must state with particularity the circumstances constituting fraud.'  How and whether a party relied on a misstatement is every bit as much a 'circumstance constituting fraud' as any other element."  *Id.* at 184–85 (internal citations and alterations omitted).

4

and providing phone number and email address for more information) (attached as Exhibit A to this Reply).³ To the extent Plaintiff is taking the position that an investor could not have called or emailed Santee Cooper and asked for the pricing and return rates, and therefore the Offering Statements were the *only* source of interest rate information, that position is unreasonable and without support. Regardless, obtaining price information from the Official Statement would hardly require that the purchaser have relied on a paragraph more than 30 pages into the Official Statement discussing oversight of the Project. In short, Plaintiff's theory would render the reliance element superfluous.

Moreover, Plaintiff does not cite a single case in his Opposition to support his made-up reliance theory. The Fourth Circuit and jurisdictions within it have consistently dismissed as irrelevant arguments made in briefing that are wholly unsupported by any citation to law and the Court should do the same here. *See, e.g.*, *Bruette v. Montgomery Cty., Md.*, 70 F. App'x 88, 93 (4th Cir. 2013) (unpublished) (finding an argument proffered by the plaintiffs to be "facially deficient" and to "lack substance at law" where it was put forth in briefing to the court unaccompanied by any legal citations); *United States v. Neely*, 595 F. Supp. 2d 662, 669 (D.S.C. 2009) (assigning little weight to and quickly rejecting one of plaintiff's arguments because it was "unsupported by any citation to law"). Plaintiff did not cite to a case in support of its attenuated and untested theory because, quite simply, there is no support for it. No court has ever recognized such a theory of reliance.

---

³ In considering a motion to dismiss, courts may "properly take judicial notice of matters of public record." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Gilmore v. Jones*, 370 F. Supp. 3d 630, 669 n.41 (W.D. Va. 2019) (permitting judicial notice of newspaper articles attached to a motion to dismiss). Exhibit A to this Reply is offered to show notice, and it is appropriate for this Court to take judicial notice of the same.

Plaintiff's made-up theory of implied direct reliance does not comport with common sense and finds no support in the law. This Court should dismiss Plaintiff's securities fraud claims on this incurable deficiency alone.[4]

## II. Plaintiff Lacks Standing, Has Not Suffered a Cognizable Loss, And Cannot Establish Loss Causation Because the Suspension of the Project Did Not Affect His Security.

### A. Plaintiff Lacks Standing And Has Not Suffered a Loss.

Plaintiff does not attempt to argue that he possesses Article III standing and a cognizable loss under the securities laws through citation to relevant legal authority. Instead, Plaintiff fully relies on his theory that, because the Project was suspended due to Santee Cooper's alleged acts, his bond must have been negatively affected somehow. It was not. Accordingly, Plaintiff's theory is insufficient to create standing.

Indeed, Plaintiff's Opposition only highlights this fatal deficiency in his claims. Plaintiff complains that, due to the Project's cancellation, bondholders "find themselves in the unenviable position of either hoping and praying that no further credit downgrades occur, jeopardizing the future financial health of Santee Cooper . . . or redeeming their existing Mini-Bonds." (Opp. at 30.) Plaintiff goes on to conclude in the next sentence that "[n]othing more is required to plead an injury and its cause." (*Id.*) But "hoping and praying" that a loss will not occur sometime in the future does not constitute a cognizable loss today. To the contrary, Plaintiff still owns

---

[4] Plaintiff's statement that "reliance is a question of fact not ripe at the pleading stage" is a feeble attempt to avoid dismissal. (Opp. at 23 n.3.) Courts regularly dismiss securities fraud claims based on a failure to adequately plead reliance. (*See* Motion at 21 (citing *Xia B. v. McAuliffe*, 927 F.3d 177, 184 (4th Cir. 2019).) Furthermore, the case Plaintiff cites to support his argument, *Gamm v. Sanderson Farms, Inc.*, (*see* Opp. at 23 n.3), is from outside the Fourth Circuit and involves a defendant that invoked the "truth-on-the-market" defense, which the court noted "is intensely fact specific." *Gamm v. Sanderson Farms, Inc.*, No. 16-cv-8420 (RMB), 2018 WL 1319157, at *5 n.7 (S.D.N.Y. Jan. 19, 2018). No party here is invoking that defense.

6

exactly the same security he purchased in 2014. The Mini-Bond is not in default, Plaintiff holds the same redemption option he has always held, and he has received and will still receive the full amount of interest and principal due under the Mini-Bond. Plaintiff has not alleged the bonds' value has changed as a result of the Project's suspension.

Moreover, Plaintiff did not respond at all to Defendants' arguments that Plaintiff cannot assert claims or factual allegations related to the 2015 and 2016 Official Statements when he did not purchase those securities. (*See* Motion at 12–13.) Plaintiff's failure to respond is a concession that he lacks standing and that the claims and allegations premised on the 2015 and 2016 Official Statements should be dismissed. *See, e.g.*, *Farmer v. United States*, No. 3:17-0956-MGL, 2018 WL 1365797, at *9 (D.S.C. Mar. 16, 2018) ("The government also asserts [in its motion to dismiss] the South Carolina Liquidation Act fails to provide subject matter jurisdiction. The liquidators [in their opposition] neglect to address this argument, thus any contention to the contrary is waived."); *Reese v. U.S. Bank Nat'l Ass'n*, No. 3:11-2990-CMC, 2012 WL 1952819, at *3 (D.S.C. Apr. 30, 2012) ("To the extent that Plaintiff has failed in her response to the motions to dismiss to respond to any of the arguments made by defendants, she has conceded them.").

In short, Plaintiff believes that his Mini-Bond is "worth less now" than it was prior to the Project's cancellation—but he cannot explain how. (*See* Opp. at 30.) The failure to do so demonstrates why Plaintiff has not suffered a cognizable loss under the securities statutes and lacks Article III standing to assert securities fraud claims. Plaintiff's claims must be dismissed.

### B.     Plaintiff Cannot Establish Loss Causation.

Plaintiff's loss causation theory fails for similar reasons. Plaintiff cannot explain why the materialization of the risk caused any loss in the value of the security he purchased. Instead,

7

Plaintiff argues that, "relying on the information contained in the Official Statements," he believed the offered interest rate adequately compensated him for the amount of risk he believed he undertook. (*Id.*) That argument, however, relates to reliance, not loss causation. Phrased another way, Plaintiff's contention is that he would not have purchased the Mini-Bonds at the offered interest rate had the risk been fully disclosed. Plaintiff cannot contort reliance into loss causation, however, by theorizing that the bonds *should have been* offered with a better interest rate. *See McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 429 (3rd Cir. 2007) (a plaintiff does not establish loss causation by alleging that the fraud/misrepresentation induced the plaintiff into buying the security). Indeed, the Complaint lacks any factual allegations about how the interest rate was set. *See In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 595 (S.D.N.Y. 2011) (finding that alleged omissions could not have inflated the security's value because value was calculated according to a statutory formula).

Defendants do not dispute Plaintiff's argument that a theoretical decrease in the market value of a security after the materialization of the risk could constitute cognizable loss causation under the law. (*See* Motion at 15 (stating same).) That theory, however, lacks any factual support whatsoever in the context of this case. Plaintiff did not allege any facts regarding the market value of the Mini-Bonds before and after the risk materialized, nor any facts suggesting that his ability to sell the Mini-Bonds has been affected. In fact, Plaintiff did not even allege a secondary market for the Mini-Bonds—much less an efficient one—has ever existed.

Plaintiff ignores the crux of Defendants' loss causation argument: that missing out on a non-existent opportunity to purchase a hypothetical security that may have had better terms is irreconcilably speculative, does not establish a loss caused by the omission of a disclosure, and violates the Supreme Court's proscription against premising securities fraud claims on a

8

retrospective opinion that the security was overpriced at the time of purchase. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342–43 (2005). For these reasons, Plaintiff's securities fraud claims must be dismissed.[5]

### III.    The Complaint Fails to Plead an Actionable Misrepresentation.

#### A.    Alleged Omissions Unrelated to the Oversight of the Project Are Not Actionable.

As discussed above, Plaintiff concedes that the Risk Mitigation Paragraph is the only statement in the Offering Statements he is challenging as false and misleading. However, that does not stop him from attempting to support his claims with purported omissions that do not pertain to the oversight of the Project. For example, Plaintiff argues the Risk Mitigation Paragraph was false and misleading because it failed to disclose:

- "any of the negative information regarding the Nuclear Project" (Opp. at 18);

- "the prospects for and risks affecting the likelihood of the Nuclear Project's timely completion (or completion at all)" (*id.* at 20);

- "all of the negative information Defendants knew about the Nuclear Project" (*id.* at 20–21); and

- "information about the current financial state of Santee Cooper, such as whether its capital outlays would jeopardize their expected interest payments during the life of construction, and Santee Cooper's financial state, whether the completed Nuclear Project would lead to a stronger revenue for Santee Cooper ensuring the Mini-Bonds paid at maturity" (*id.* at 23).

---

[5] Plaintiff contends that the Court should submit his loss causation argument to a jury rather than evaluate it for compliance with Supreme Court jurisprudence. (Opp. at 31.) To the contrary, the dismissal of Plaintiff's claims, and denial of leave to amend, due to his fundamentally flawed loss causation theory is amply supported by law. *See, e.g.*, *Katyle v. Penn Nat'l. Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011) (affirming district court's dismissal of securities fraud claim and denial of leave to amend where the plaintiff's loss causation theory violated *Dura*).

9

Plaintiff argues in his Opposition that because the Risk Mitigation Paragraph mentions the word "risk," that opens the door for Plaintiff to argue that essentially any omission regarding the Project proves the Risk Mitigation Paragraph was false and misleading. (*See* Opp. at 20.) But Courts logically have held that omissions that do not pertain to the subject of the alleged false statement at issue are not actionable because the omissions and the subject of the statements are too attenuated. *See, e.g.*, *Cohen v. Kitov Pharm. Holdings, Ltd.*, 17-cv-0917 (LGS), 2018 WL 1406619, at *5 (S.D.N.Y. March 20, 2018) (holding that "[t]he subject of the statement—a general description of the SPA process—and the subject of the omission—falsified data—are too unrelated for the omission to be actionable as to the statement made"). Here, the subject of the Risk Mitigation Paragraph was the project oversight that Santee Cooper and SCE&G provided, not all of the risks and problems with the Project. Any alleged omissions that do not pertain to the oversight of the Project are not actionable.

### B. The Statements in the Risk Mitigation Paragraph Are Not False Or Misleading.

As Defendants argued in their Motion, the Risk Mitigation Paragraph is not false or misleading. As a preliminary matter, all of the statements Plaintiff cites to in his Opposition to support his claim that the Risk Mitigation Paragraph was false and misleading post-date Plaintiff's June 1, 2014, purchase of Mini-Bonds[6] and are therefore inappropriate to consider on this motion to dismiss. *See* Section II.A., *supra*. As Defendants noted in their Motion, and Plaintiff failed to respond to, only three paragraphs in the Complaint allege Defendants' awareness of problems with the Project prior to Plaintiff's June 1, 2014 purchase and these three paragraphs do not provide any support for the argument that the Risk Mitigation Paragraph is

---

[6] (*See* Opp. at 18–19 (citing Complaint ¶ 48 (Bechtel Report dated October 22, 2015), ¶¶ 61 & 62 (memorandum dated March 4, 2016), ¶ 64 (memorandum dated March 3, 2016).)

false or misleading.  (*See* Motion at 13 n.4.)

In addition, none of the statements in the Risk Mitigation Paragraph amount to a promise or guarantee that SCE&G and/or Santee Cooper's oversight would prevent Project risks from occurring.  (*See* Motion at 17–18.)  Santee Cooper did not insure against the risks materializing.  In fact, Santee Cooper makes that clear when it begins the Risk Mitigation Paragraph by stating: "to mitigate risk . . . ."  (*Id.* at 18; *see In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 538 (S.D.N.Y. 2016) ("None of the statements identified by Plaintiff are anything more than imprecise descriptors of Virtus Partners' approach to oversight and do not amount to a promise or guarantee that its choices would prevent the selection of managers or sub-advisors that were less than 'high quality.'").)  Plaintiff's only response is to cite to the alleged misrepresentations and omissions noted above that have nothing to do with the statement Plaintiff alleges is false and misleading in this case—the Risk Mitigation Paragraph.  That is insufficient to survive a Motion to Dismiss.  Plaintiff has not adequately alleged the Risk Mitigation Paragraph was false or misleading and the arguments in the Opposition do nothing to bolster Plaintiff's deficient allegations.

### C.     The Statements In the Risk Mitigation Paragraph Are Not Material.

Defendants cited multiple cases in their Motion for the proposition that statements regarding oversight or compliance are not material because they are too general to be actionable.  (*See* Motion at 19 (citing *In re Virtus*, 195 F. Supp. 3d at 538 (concluding that statements claiming "disciplined" and "rigorous" oversight, despite defendants' alleged knowledge the oversight was not "in [any] way 'high quality . . . are too general to cause a reasonable investor to rely on them"); *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 401 (S.D.N.Y. 2016) (concluding that company's statements concerning its legal compliance, such as "[w]e maintain an effective

11

compliance organization," were not actionable because such statements were "too general to cause a reasonable investor to rely on them").) Plaintiff's only response is that Defendants "fail[] to appreciate that the Mini-Bonds are not common stock, they are Company debt" and that information regarding the Nuclear Project was "especially material" to Mini-Bond purchasers because Santee Cooper was spending a lot of money on the Project and because the Project would be a revenue source in the future. (Opp. at 22.) Plaintiff's attempt to distinguish Defendants' case law is illogical. A company's shareholders have no less reason to be interested in the oversight of a major project than a bondholder. Plaintiff cites no case law in support of this invented legal distinction between bondholders and stockholders.

Accordingly, this Court should dismiss Plaintiff's securities fraud claims because the statements in the Risk Mitigation Paragraph are not material misstatements under Rule 10b–5.[7]

## IV.     Plaintiff Fails to Raise a Strong Inference of Scienter.

In his Opposition, Plaintiff doubles down on the idea that knowledge is sufficient to adequately plead scienter under the PSLRA's heightened pleading standard. As a preliminary matter, as noted above, because Plaintiff does not have standing to assert securities fraud claims for the 2015 and 2016 Mini-Bonds, the only allegations upon which Plaintiff can rely to support his argument that he has raised a strong inference of scienter with respect to the 2014 Mini-Bonds are allegations in the Complaint that pre-date Plaintiff's June 1, 2014 purchase of bonds.

---

[7] Plaintiff again claims that this Court should not decide the issue of whether the Risk Mitigation is a material misstatement at the motion to dismiss stage. (Opp. at 18.) However, courts in the Fourth Circuit routinely dismiss securities fraud claims for failure to adequately plead the material misstatement or omission element. *See, e.g.*, *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 657–58 (4th Cir. 2004) (affirming dismissal of claim that CEO lied about graduating college on materiality grounds); *Hillson Partners Ltd. Partnership v. Adage, Inc.*, 42 F.3d 204, 220 (1994) (affirming dismissal of securities fraud complaint because the statements at issue were not material).

As Defendants noted in their Motion, only three paragraphs in the Complaint allege Defendants' awareness of Project problems prior to Plaintiff's purchase of the 2014 Mini-Bonds. (*See* Motion at 13 n.4.) Those three paragraphs are not nearly enough to adequately raise a strong inference of scienter under the PSLRA's heightened pleading standard. In fact, Plaintiff's argument that there is no innocent inference is based entirely on allegations in the Complaint that post-date Plaintiff's June 1, 2014 purchase of bonds. (*See* Opp. at 27.)

In an attempt to revive his scienter allegations, Plaintiff tries to distinguish the Fourth Circuit's decision in *Maguire Financial, LP v. PowerSecure International, Inc.*, cited by Defendants in their Motion for the proposition that mere knowledge, standing alone, is not evidence of scienter. (*See* Motion at 31–32.) But Plaintiff's attempt to distinguish the Fourth Circuit's decision is unavailing. Plaintiff argues that *Maguire* is inapplicable here because the misstatement in *Maguire* related to one word and pertained to a matter that impacted only 4.1% of the company's annual revenue. (Opp. at 26.) Those are distinctions without a difference. The fact that the Fourth Circuit held that a plaintiff could not stack inferences to allege scienter as to a single misstatement or word does not render the Fourth Circuit's holding inapplicable when a complaint alleges a misstatement consisting of more than one word. Nor does the fact that the misstatement in *Maguire* related to a matter that affected only 4.1% of the company's annual revenue render the holding inapplicable to matters where the effect is greater than 4.1%. These purported distinctions are unavailing and Plaintiff has not cited a single case that would support them.

## V. Plaintiff's Section 20(a) Claim Against Carter Must be Dismissed Because the Complaint Fails to State a Substantive Violation of the Securities Laws.

As discussed in the Motion and above, Plaintiff lacks standing and has failed to

13

adequately plead reliance, loss causation, falsity and materiality, and scienter. Accordingly, Plaintiff's Section 20(a) claim against Carter must be dismissed because Plaintiff has failed to state a cause of action for violation of Section 10(b) or Rule 10b–5.

## VI.     Amendment Would be Futile.

The Fourth Circuit has instructed that amendment of a complaint should be denied when the amendment would be futile. *See, e.g.*, *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001). Here, there is no doubt that amendment of the Complaint would be futile. Among other incurable problems, Plaintiff's made-up theory of implied direct reliance is not recognized by a single Court and Plaintiff has not suffered an economic loss or injury, which is fatal to his standing and loss causation arguments. No amount of repleading can cure those deficiencies.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

**[signature on next page]**

14

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/William C. Hubbard
William C. Hubbard
Federal Bar No. 1988
E-Mail: william.hubbard@nelsonmullins.com
Cory E. Manning
Federal Bar No. 9697
E-Mail: cory.manning@nelsonmullins.com
A. Mattison Bogan
Federal Bar No. 9826
E-Mail: matt.bogan@nelsonmullins.com
Carmen Harper Thomas
Federal Bar No. 10170
E-Mail: carmen.thomas@nelsonmullins.com
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC  29201
(803) 799-2000

Robert L. Lindholm (*Pro Hac Vice*)
Federal Bar No. 52800
E-Mail: robert.lindholm@nelsonmullins.com
One Wells Fargo Center, 23rd Floor
301 South College Street
Charlotte, NC 28202
(704) 417-3000

J. Michael Baxley
Senior Vice President and General Counsel
South Carolina Public Service Authority
Federal Bar No. 1248
E-Mail: mike.baxley@santeecooper.com
Post Office Box 294601
Moncks Corner, SC  29461
(843) 761-7044

Attorneys for South Carolina Public Service Authority and Lonnie N. Carter

Columbia, South Carolina
August 26, 2019

15