**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Murray C. Turka, on Behalf of Himself and Others Similarly Situated, | Civil Action No. 2:19-1102-RMG |
| Plaintiffs, | |
| v. | **ORDER** |
| South Carolina Public Service Authority and Lonnie N. Carter, | |
| Defendants. | |

Before the Court is Defendant South Carolina Public Service Authority's motion to compel a document production from Plaintiff. (Dkt. No. 58.) For the reasons set forth below, the motion is granted.

**I.      Background**

This is a securities fraud putative class action arising out of the abandoned construction of two 1,117-megawat AP1000 nuclear reactors at the Virgil C. Summer Nuclear Generating Station in Jenkinsville, South Carolina (the "Nuclear Project"). The Nuclear Project was a joint venture between state-owned utility, South Carolina Public Service Authority ("Santee Cooper"), owning 45%, and SCANA Corporation's primary subsidiary, SCE&G, owning 55%. They agreed to the joint venture in 2008 and applied for a tax credit under the Energy Policy Act, which would provide an approximately $2.2 billion credit if the Nuclear Project were completed by January 1, 2021. (Dkt. No. 1 ¶¶ 3, 4.) To fund the Nuclear Project, Santee Cooper marketed and sold small denomination corporate bonds (the "Mini-Bonds") exclusively to its electricity customers and other South Carolina residents. Santee Cooper and SCANA began construction of the Nuclear Project in early 2013. On July 31, 2017, they publicly announced that they were abandoning

1

construction due to cost. Approximately one year later, Moody's Investment Services downgraded Santee Cooper's credit rating. (*Id.* ¶¶ 1, 8, 9.)

Plaintiff Murray Turka brings this action on behalf of those that purchased or acquired the Mini-Bonds between May 1, 2014 and July 31, 2017. (*Id.* ¶ 98, Dkt. No. 21 at 6.) He brings two causes of action: violation of Section 10(b) of the Securities Exchange Act of 1934 and of Rule 10b-5 by Santee Cooper and Lonnie Carter, its President and Chief Executive Officer during the class period; and violation of Section 20(a) of the Securities Exchange Act by Carter. (Dkt. No. 1 ¶¶ 17, 104-114.) The basis of these claims is that Santee Cooper and Carter made or approved false or misleading statements to the Mini-Bond holders in Official Statements. (*Id.* ¶ 106.) Specifically, Plaintiff alleges that the Mini-Bond holders purchased the security pursuant to the offering documents' Official Statements, which outlined generic "Risk Factors" typically associated with nuclear plant construction and development. (*Id.* ¶¶ 94-97.)[1] But, as Plaintiff

---

[1] The Official Statements, issued on May 1 of 2014, 2015 and 2016, provided:

Nuclear Construction – Risk Factors. The construction of large generating plants such as Summer Nuclear Units 2 and 3 involves significant financial risk. Delays or cost overruns may be incurred as a result of risks such as (a) inconsistent quality of equipment, materials and labor, (b) work stoppages, (c) regulatory matters, (d) unforeseen engineering problems, (e) unanticipated increases in the cost of materials and labor, (f) performance by engineering, procurement, or construction contractors, and (g) increases in the cost of debt. Moreover, no nuclear plants have been constructed in the United States using advanced designs such as the Westinghouse AP1000 reactor. Therefore, estimating the cost of construction of any new nuclear plant is inherently uncertain.

To mitigate risk, SCE&G, acting for itself and as agent for the Authority, provides project oversight for Summer Nuclear Units 2 and 3 through its New Nuclear Deployment ("NND") business unit. The Authority provides dedicated on-site personnel to monitor and assist NND with the daily oversight of the project. The managerial framework of the NND group is comprised of in-house nuclear industry veterans who lead various internal departments with expertise in: nuclear operations, engineering, construction, maintenance, quality assurance and nuclear regulations.

(*Id.* ¶ 95.)

alleges, at the time that Santee Cooper issued these Official Statements, it knew that the "significant financial risk" was no longer a hypothetical because the Nuclear Project was already behind construction schedule as a result of mismanagement. (*Id*. ¶¶ 95-96.)

The Court previously denied Defendants' motion to dismiss the complaint and the parties have been engaging in discovery, including in preparation for mediation. The dispute now before the Court is whether Plaintiff must be compelled to produce documents dated from January 1, 2011 through the present[2] in response to five requests for production (RFP) propounded by Santee Cooper.

**II.     Legal Standard**

**A.     Discovery Generally**

Parties to a civil litigation "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. To be relevant, the discovery sought simply must be "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Rule 26 should be given a "broad and liberal treatment" to provide a party with information reasonably necessary to afford a fair opportunity to develop its case. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992). Nonetheless, discovery is not limitless and the district court "must limit the frequency or extent of discovery . .

---

[2] Santee Cooper states that it has agreed to narrow the temporal scope of the relevant document demands to "January 11, 2011 . . . to the present." (Dkt. No. 58 n.1.) It is unclear if by "the present" Santee Cooper refers to the date its motion to compel was filed (September 4, 2020) or the date of this Order. The Court therefore directs the parties to confer and confirm the temporal scope of documents that Plaintiff shall produce pursuant to this Order.

. if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). "The scope and conduct of discovery are within the sound discretion of the district court." *Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995). "Courts have broad discretion in [their] resolution of discovery problems arising in cases before [them]." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003) (alternations in original and internal quotation marks omitted).

**B.     Motions to Compel**

"If a party fails to make a disclosure" required by Rule 26, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a). Specifically, a party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). Broad discretion is afforded a district court's decision to grant or deny a motion to compel. *See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.") (internal citation omitted). "While the party seeking discovery has the burden to establish its relevancy and proportionality, the party objecting has the burden of showing the discovery should not be allowed[.]" *Cohen v. United States*, No. 3:16-cv-3053-JMC, 2018 WL 1900043, at *2 (D.S.C. Apr. 20, 2018).

**III.    Discussion**

Discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or defense, and (3) proportional to the needs of the case. *See Cohen v. United*

4

*States*, No. 3:16-cv-3053-JMC, 2018 WL 1900043, at *2 (D.S.C. Apr. 20, 2018).   With that basic premise in mind, the Court reviews each RFP in dispute:

> **RFP No. 7.** All documents relating to other securities or other investments that Plaintiff considered purchasing instead of purchasing the Mini-Bonds, including any such securities or investments that Plaintiff contends he would or may have purchased or pursued but for Santee Cooper's alleged misleading statements.
>
> **RFP No. 10.** All documents relating to any brokerage or investment accounts that you have funded, directly or indirectly, regardless of whether such accounts were maintained in your name, the name of another person, a trust or a corporate entity.
>
> **RFP No. 11.** Any and all monthly or other period account statements, transactions, confirmations, notes, correspondence, opening account forms, customer agreements, margin agreements, option agreements, suitability forms, joint account agreements, analysis or risk disclosure documents referring or relating to any accounts maintained by you with any securities broker firms, commodities brokerage firms, banks, investment advisors and investment companies.  This Request is not limited to accounts solely in your name and therefore also seeks documents relating to accounts held jointly with others or in which you claim any beneficial or ownership interest.
>
> **RFP No. 12.** All documents that reflect, refer to or relate to any conversations between you and any broker firm, broker, investment advisor, or other person concerning investments in any of your accounts.
>
> **RFP No. 16.** All documents evidencing or relating to any bonds other than the Mini-Bonds that Plaintiff has purchased or considered purchasing from 2000 to the present.

(Dkt. No. 58-1.)

Plaintiff specifically objects to each of these RFPs "to the extent it seeks information that is neither relevant to the subject matter of this Action nor reasonably calculated to lead to the discovery of admissible evidence."  He further objects only to RFPs No. 10, 11, 12 and 16 as "overly broad and unduly burdensome as it seeks documents outside the Class Period.  Plaintiff will not produce records of investments that do not relate to the subject of this litigation." (Dkt. No. 58-2.)

First, as to the specific objection to relevance, a "discovery request is relevant if there is any possibility that the information sought might be relevant to the subject matter of [the] action." *Cohen v. United States*, No. 3:16-cv-3053-JMC, 2018 WL 1900043, at *2 (D.S.C. Apr. 20, 2018) (quotation marks omitted). In a Section 10b-5 claim alleging direct reliance, such as this one, the plaintiff's sophistication as an investor is relevant to the element of reliance. *See, e.g.*, *In re AES Corp. Sec. Litig.*, 849 F. Supp. 907, 910 (S.D.N.Y. 1994) (holding that sophistication is relevant for merits discovery for rebutting plaintiff's claim of reliance at trial). This is because a "sophisticated investor is held to a higher duty of inquiry, and so may not claim reliance upon misrepresentations which might dupe only the naïve investor." *Davidson Pipe Co. v Laventhol and Horwath*, 120 F.R.D. 455, 460 (S.D.N.Y. 1988). "Thus, evidence probative of the degree of sophistication of a plaintiff in a securities case is . . . an apt subject for discovery." *Id.* "Because the discovery of prior investments is reasonably calculated to lead to evidence concerning plaintiff['s] sophistication in the marketplace, such documents are discoverable." *In re AES Corp. Sec. Litig*, 849 F. Supp. at 910. Plaintiff seems to contend that the information sought is not relevant to the fact of Plaintiff's reliance, but this misses the point; Santee Cooper seeks to investigate the justifiability of the reliance. The documents targeted by each RFP in dispute are relevant to Plaintiff's prior investment choices and strategies, which are relevant to his sophistication as an investor alleging here direct reliance on specific misstatements.[3] These documents are, therefore, relevant under Rule 26.

---

[3] Plaintiff appears to acknowledge as much, stating: "Santee Cooper contends that because this case alleges direct reliance, that Mr. Turka's sophistication and investment history are of special concern. [ ] This may be so. But given the burdensome scope of information sought by Santee Cooper . . . there is no reason that such an inquiry should not initiate with the deposition, and then proceed to document discovery only if needed." (Dkt. No. 60 n.2.)

6

Plaintiff also objects to RFPs No. 10, 11, 12 and 16 as overly broad and unduly burdensome. Although not specifically objected to regarding RFP No. 7, Plaintiff argues in his response to Plaintiff's motion that every RFP is unduly burdensome because the information sought could be obtained via his deposition testimony. Santee Cooper makes the point that these documents are integral to preparation for Plaintiff's deposition. In any event, "a plaintiff should not be exposed to the minute details of every transaction he has engaged in simply by filing a complaint." *In re AES Corp. Sec. Litig*, 849 F. Supp. at n.7. Rather, the district court must consider whether a discovery request is proportional to the needs of the case by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Plaintiff asserts that he "does not have in his possession, custody, or control documents detailing every investment going back twenty, or even fifteen years" and "he retains only current account statements for his investments." (Dkt. No. 60 at 3.) It therefore follows that production of any non-privileged responsive documents will not be unduly burdensome, including because the "court cannot compel a party to furnish information that they do not possess." *Cohen*, 2018 WL 1900043, at *4 (quotation marks omitted). The Court therefore finds that each RFP in dispute seeks information that is relevant and proportional to the needs of this case.

IV. <u>Conclusion</u>

For the foregoing reasons, Santee Cooper's motion to compel (Dkt. No. 58) is **GRANTED**. Plaintiff is **directed** to produce non-privileged documents responsive to RFPs Nos. 7, 10, 11, 12 and 16 within fourteen (14) days of the date of this Order. The parties **shall** promptly schedule

Plaintiff's deposition to be taken on a date within eighteen (18) days thereafter, in order to ensure that it is completed in advance of the parties' scheduled mediation.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

September 17, 2020
Charleston, South Carolina