IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| MURRAY C. TURKA, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTH CAROLINA PUBLIC SERVICE AUTHORITY and LONNIE N. CARTER,<br><br>Defendants. | Civil Action No. 2:19-cv-1102-RMG |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Murray C. Turka ("Lead Plaintiff" or "Plaintiff"), on behalf of himself and the proposed Settlement Class, respectfully submits this memorandum of law in support of his motion for final approval of the proposed settlement of the Action (the "Settlement").[1]

**I. INTRODUCTION**

Subject to Court approval, the Parties have reached an agreement to settle all claims in this securities class action (the "Action") in exchange for a payment of $2,000,000.00 to the proposed class of investors who acquired South Carolina Public Service Authority ("Santee Cooper") Mini-

---

[1] Lead Counsel has met and conferred with counsel for Defendants who have indicated they do not oppose the relief sought in this motion.

1

Bonds between May 1, 2014 and July 31, 2017 (the "Class Period").[2] Lead Plaintiff respectfully submits that the proposed Settlement is an excellent result for the Settlement Class and easily satisfies the standards for final approval under Rule 23(e)(2) of the Federal Rules of Civil Procedure.

As detailed herein, the Settlement represents a very favorable recovery for the Settlement Class, ensuring members receive a greater return on their investment than they otherwise were promised. This is particularly true given the risks attendant to the continued prosecution of the Action.

At the time the agreement to settle was reached, Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the Action. Before the Settlement was agreed to, Lead Counsel had: (i) conducted an extensive investigation into the alleged fraud, which included a thorough review of the voluminous public record and documents obtained pursuant to the Freedom of Information Act ("FOIA"); (ii) drafted and filed a detailed, complaint based on Lead Counsel's investigation; (iii) engaged in briefing in successfully defeating the Defendants' motions to dismiss the complaint; (iv) engaged in substantial informal and formal discovery, including the production of over 800,000 pages of documents by Defendants; (v) produced documents on behalf of Lead Plaintiff and defended Lead Plaintiff's deposition in anticipation of motion practice regarding class certification; and (vi) engaged in extensive arm's-length settlement negotiations which required the retention of a damages expert and a full-day mediation overseen by the Honorable Jean H. Toal ("Justice Toal").

---

[2] All capitalized terms not defined herein have the meanings ascribed to them in the Settlement Agreement and Release, dated January 25, 2021 (the "Settlement Agreement"), which was attached as Exhibit 1 to Plaintiff's Unopposed Motion for Preliminary Approval. ECF No. 67-2.

While Lead Plaintiff and Lead Counsel continue to believe that the claims asserted against Defendants are meritorious, they recognize that the Action presented substantial risks to establishing the liability of Defendants, including challenges in establishing the falsity of Defendants' statements and whether they were made with the intent to deceive investors and commit securities fraud. Lead Plaintiff also faced challenges proving loss causation and class-wide damages. This is particularly true, as Defendants would certainly have asserted, because on January 1, 2020, Santee Cooper called all outstanding Mini-Bonds – paying all proposed Class Members the entirety of what they were promised when they first invested.

In light of these considerations, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is fair, reasonable, and adequate and warrants final approval by the Court.

## II. ARGUMENT

### A. The Proposed Settlement Warrants Final Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims. *See* Fed. R. Civ. P. 23(e). A class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In determining whether to approve the Settlement, the Court should be guided by the principle that "[t]here is a strong judicial policy in favor of settlements, particularly in the class action context." *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 374816, at *3 (D.S.C. Feb. 1, 2016) (citation omitted). "'The voluntary resolution of litigation through settlement is strongly favored by the courts' and is 'particularly appropriate' in class actions." *In re LandAmerica §1031 Exch. Servs., Inc. IRS §1031 Tax Deferred Exch. Litig.*, MDL No. 2054, 2012 WL 13124593, at *4 (D.S.C. July 12, 2012) (*quoting S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990)).

Rule 23(e)(2), as amended on December 1, 2018, provides that the Court should determine whether a proposed settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

District courts should also consider the following factors when evaluating a proposed settlement:

> (1) the amount offered in settlement; (2) the risks inherent in continued litigation; (3) the extent of discovery completed and the stage of the proceeding when the settlement was reached; (4) the risk, complexity, expense, and likely duration of the litigation absent settlement; (5) the experience and views of class counsel; and (6) the response of Class Members to the Settlement.

*Brunson v. Louisiana-Pac. Corp.*, 818 F. Supp. 2d 922, 926 (D.S.C. 2011) (Gergel, J.).[3]

The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve

---

[3] *See also In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991) (identifying four factors for determining a settlement's fairness: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation," and five factors for assessing its adequacy: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[ ] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement").

the proposal." Advisory Committee Notes to 2018 Amendments. Accordingly, Lead Plaintiff will discuss the fairness, reasonableness, and adequacy of the Settlement principally in relation to the four factors set forth in Rule 23(e)(2), but will also discuss the application of relevant, non-duplicative factors traditionally considered by the Fourth Circuit.

All the applicable factors strongly support approval of the Settlement.

### 1. Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

In determining whether to approve a class action settlement, the Court should consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Courts consider whether: (1) the proposed class representative's interests are to vigorously pursue the claims of the class and are not antagonistic to the interests of other class members; and (2) the proposed class counsel are qualified, experienced, and able to conduct the litigation. *See City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co.*, 270 F.R.D. 247, 252 (D.S.C. 2010); *see also Kirven v. Cent. States Health & Life Co. of Omaha*, 2015 WL 1314086, at *5 (D.S.C. Mar. 23, 2015) ("The inquiry into the adequacy of legal counsel focuses on whether counsel is competent, dedicated, qualified, and experienced enough to conduct the litigation and whether there is an assurance of vigorous prosecution.") (citation omitted).

Here, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class in both their prosecution of the Action and in the negotiation and achievement of the Settlement. Lead Plaintiff's claims are typical of and coextensive with those of other Class Members, and he lacks any interests that are antagonistic to the interest of other members of the Settlement Class. Therefore, Lead Plaintiff—like all other members of the Settlement Class—have an interest in obtaining the largest possible recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of

maximizing recovery, there is no conflict of interest between the class representatives and other class members.") (citation omitted). Lead Plaintiff has also diligently supervised and participated in the litigation on behalf of the Settlement Class. *See* Declaration of Christopher L. Nelson in Support of Motion for Final Approval of Class Action Settlement and Motion for Award of Attorneys' Fees and Payment of Litigation Expenses ("Nelson Decl.") at Ex. A.

Moreover, Lead Plaintiff has retained counsel who are experienced in securities litigation and have successfully prosecuted many complex class actions throughout the United States. Lead Counsel have vigorously pursued the claims on behalf of Class Members and negotiated a successful recovery for the Settlement Class through mediation.

Accordingly, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class.

### 2. The Settlement Was Reached Following Substantial Discovery and Arm's-Length Negotiations with an Experienced Mediator

In weighing approval of a class action settlement, the Court must consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Courts in the Fourth Circuit have traditionally considered the following related circumstances in determining the "procedural" fairness of a settlement: (1) the extent of discovery that has taken place and the stage of the proceedings; and (2) bad faith or collusion and circumstances surrounding the negotiation. An analysis of these factors strongly supports approval of the Settlement here.

At the time the Parties reached the Settlement, the knowledge of Lead Plaintiff and Lead Counsel, and the proceedings themselves, had reached a stage where the Parties could make a well-founded evaluation of the claims and propriety of settlement. As discussed above, Lead Plaintiff conducted a significant pre-filing investigation including the review of over 8,000 pages of documents received pursuant to the FOIA. Lead Counsel then vigorously prosecuted the Action,

defeating Defendants' motions to dismiss and preparing to move for class certification – which included producing documents on behalf of Lead Plaintiff and defending his deposition. These efforts provided Lead Counsel with an opportunity to assess the merits of the Action. *See Kirven*, 2015 WL 1314086 at *5 (granting final approval where "discovery was adequate to develop the record and ascertain the merits of the case").

Moreover, the Settlement was reached after rigorous, arm's-length negotiations, overseen by Justice Toal. These negotiations were informed by a full-day mediation on October 21, 2020. Under the guidance of Justice Toal, prior to and at the mediation, the parties engaged in substantive discussions regarding potential damages, including the exchange of potential damages models prepared by the Parties and their respective experts. Nelson Decl. at ¶ 10. In addition, the mediation was informed by information obtained in the production of documents received in response to Lead Counsel's FOIA request and document produced by Defendants. The foregoing, combined with the extensive investigation conducted by Lead Plaintiff prior to filing the Action and the briefing on the motions to dismiss and in preparation for the Mediation, resulted in the Parties having a thorough understanding of the legal and factual issues in this Action. Thus, the stage of the proceedings and the substantial amount of discovery conducted in the Action supports approval of the Settlement. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991) (a court should consider if a settlement "was reached as a result of good-faith bargaining at arm's length, without collusion"); *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 4061537, at *12 (D.S.C. Sept. 14, 2012) ("supervision by a mediator lends an air of fairness to agreements that are ultimately reached") (citation omitted).

7

### 3. The Relief that the Settlement Provides for the Settlement Class is Adequate in Light of the Costs and Risks of Further Litigation

In determining whether a settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). This factor under Rule 23(e)(2)(C) encompasses four of the factors traditionally considered by the Fourth Circuit when evaluating a proposed class action settlement: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; and (3) the anticipated duration and expense of additional litigation. Each of these factors supports approval of the Settlement under Rule 23(e)(2)(C).

Continued litigation of the Action presented risks that Lead Plaintiff would be unable to establish liability and damages. In addition, continuing the litigation through trial and appeals would impose substantial additional costs on the Settlement Class and would result in extended delays before any recovery could be achieved. The Settlement avoids those further costs and delays.

#### i. The Risk of Establishing Liability Support Approval of the Settlement

While Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants in the Action are meritorious, they recognize that this Action presented several substantial risks to establishing both liability and damages.

First, Lead Plaintiff would have faced significant hurdles in establishing that Defendants' public statements were actionable under the federal securities laws. The Complaint alleged that the Official Statements – the regulatory filings necessary for Santee Cooper to issue the Mini-

Bonds – falsely presented (1) as mere risks the possibility of delays related to the Nuclear Project; and (2) that Santee Cooper was adequately supervising the Nuclear Project. Nelson Decl. at ¶15. As alleged in the Complaint, Lead Plaintiff sought to argue that prior to the publication of each of the Official Statements within the class period, Defendants *knew* that (1) SCE&G was not providing adequate oversight of the Nuclear Project; (2) Santee Cooper's own attempts to supervise the Nuclear Project were failing; and (3) that the Nuclear Project was already hopelessly behind schedule and unlikely to be completed. *Id*. In response to these arguments, Defendants would have argued that these statements were accompanied by meaningful cautionary language regarding the Nuclear Project's risks (including risk warnings concerning the Nuclear Project's schedule and costs) that rendered non-actionable Defendants' failure to disclose the independent adverse assessment of the Nuclear Project by Bechtel Corporation ("Bechtel"), which is at the heart of the alleged fraud. *Id*. Further, Defendants would have argued that such forward-looking statements were protected by the PSLRA safe harbor because they were not made with actual knowledge of their falsity. *Id*.

### ii. The Risk of Establishing Loss Causation and Damages Support Approval of the Settlement

Even assuming Lead Plaintiff overcame the above risks and successfully established liability, Lead Plaintiff would have confronted considerable additional challenges in establishing loss causation and damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'") (citation omitted).

Lead Counsel sought to meet their burden of proving loss causation and damages through their allegations that the disclosure that the Nuclear Project was being abandoned negatively affected the value of the Mini-Bonds, as detailed under relevant Fourth Circuit precedent. *See Singer v. Reali*, 883 F.3d 425, 439 (4th Cir. 2018) ("Importantly, the ultimate loss causation inquiry

9

under either the corrective disclosure theory or the materialization of a concealed risk theory is the same: whether a misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security.")

Lead Plaintiff's pleading theory argued that once the disclosure was made, Class Members became aware they were now in possession of a far riskier security then they had initially bargained to buy. Nelson Decl. at ¶17. And that risk was not illusory – as alleged in the Action, the failure of the Nuclear Project placed significant economic strain on Santee Cooper and was a material factor in determination by Moody's to downgrade the credit worthiness of the Company's debt. *Id*.

Conversely, Defendants would continue to argue that because the Mini-Bonds were not publicly traded and because Santee Cooper never missed a scheduled interest payment on the Mini-Bonds, Lead Plaintiff would be unable to prove any adverse effect on the value of the Mini-Bonds. *Id*. at ¶18.

The forthcoming fight over damages would have been similar. Lead Plaintiff would have argued that Class Members deserved compensation for the additional risk they unknowingly took on when investing in the Mini-Bonds. *Id*. at ¶19. The intent then would be to detail an appropriate interest rate on the Mini-Bonds that properly valued the true risk of the investment during the Class Period. Defendants would have certainly argued that the damages in the Action was zero. *Id*. Their argument would have been bolstered by the January 1, 2020 call of the Mini-Bonds whereby Santee Cooper paid off the amounts owed under the Mini-Bonds in full. *Id*. Not only did this cap the damages Lead Plaintiff could seek by reducing the time to maturity of the bonds, Defendants would argue that Santee Cooper fulfilled the contractual obligations of the Mini-Bonds and eliminated any default risk associated with owning the Mini-Bonds. *Id*.

Proving damages at trial would certainly have led to a battle of experts with no certainty of recovery for Class Members.

### 4. The Costs and Delays of Continued Litigation Support Approval of the Settlement

The substantial costs and delays required before any recovery could be obtained through litigation also strongly support approval of the Settlement. *See Mills*, 265 F.R.D. at 256 ("This factor is based on a sound policy of conserving the resources of the Court and the certainty that 'unnecessary and unwarranted expenditure of resources and time benefit[s] all parties.'") (citation omitted).

While this case settled after substantial document discovery had occurred, achieving a litigated verdict in the Action would have required substantial additional time and expense. In the absence of the Settlement, achieving a recovery for the Settlement Class would have required: (i) the conclusion of fact discovery (including taking numerous depositions); (ii) obtaining a class certification order from the Court and briefing Defendants' likely interlocutory appeal of that order to the Fourth Circuit under Rule 23(f); (iii) conducting complex and expensive expert discovery; (iv) briefing a motion for summary judgment; (v) a trial involving substantial fact and expert testimony; and (vi) post-trial motions. Finally, whatever the outcome at trial, it is virtually certain that appeals would be taken from any verdict. The foregoing would pose substantial expense for the Settlement Class and delay the Settlement Class's ability to recover—assuming, of course, that Lead Plaintiff and the Settlement Class were ultimately successful on their claims. *See In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 667 (E.D. Va. 2001) ("additional litigation of plaintiffs' claims ... would likely have been protracted and costly ... [n]or is it likely that this litigation would have ended with a jury verdict; there is little doubt that a jury verdict for either side would only have ushered in a new round of litigation in the Fourth Circuit and beyond ...").

In contrast to costly, lengthy, and uncertain continued litigation, the Settlement provides an immediate, significant, and certain recovery for the Settlement Class.

### 5. All Other Factors Set Forth in Rule 23(e)(2)(C) Support Approval of the Settlement

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors also supports approval of the Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

First, as detailed in Lead Plaintiff's Motion to Approve Plan of Distribution filed herewith, the procedures for administering the Settlement in this Action are unique and inure to the benefit of the Settlement Class. The nature of the Mini-Bonds, and the January 2020 call of the Mini-Bonds, creates an identifiable class where the Settlement Administrator – through the assistance of counsel for Defendants and Santee Cooper's transfer agents – knows the identity and contact information for the Settlement Class. *See* Declaration of Cornelia Vieira Concerning Mailing of Postcard Notice and Requests for Exclusion and Objections Received to Date ("Vieira Decl.") at ¶¶4-6 (ECF No. 72). As a result, no "claims process" is necessary. Should the Court approve the Settlement, the Settlement Benefit will be able to be quickly and accurately distributed.

Second, the relief provided for the Settlement Class in the Settlement is also adequate when the terms of the proposed award of attorney's fees are taken into account. As discussed in the accompanying Motion for Award of Attorneys' Fees and Payment of Litigation Expenses, the proposed attorneys' fees of 30% of the Settlement Benefit, to be paid upon approval by the Court, are reasonable in light of the efforts of Lead Counsel and the risks in the litigation. Most

importantly, with respect to the Court's consideration the fairness of the Settlement, is the fact that approval of attorneys' fees are entirely separate from approval of the Settlement, and that neither Lead Plaintiff nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or expenses. As an additional benefit to the Settlement Class, Santee Cooper has agreed to separately pay the costs to administer the Settlement up to $35,0000.00 – preventing the need from those funds to be withdrawn from the Settlement Benefit. Nelson Decl. at ¶33.

Lastly, Rule 23 asks the Court to consider the fairness of the proposed settlement in light of any agreements required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, the only agreement entered into by the Parties was the Settlement Agreement previously filed with the Court.

### B. The Settlement Treats Settlement Class Members Equitably Relative to Each Other

The proposed Settlement also treats members of the Settlement Class equitably relative to one another. As discussed in the accompanying motion, pursuant to the Plan of Distribution set forth in the Notice, each Class Member will receive a *pro rata* share of the recovery based on the amount they invested in the Mini-Bonds.

### C. Reaction of the Settlement Class to the Settlement

One additional factor not included in Rule 23(e)(2) that should be considered in assessing the proposed Settlement's fairness and adequacy is the Settlement Class's reaction to the proposed Settlement. *See Kirven II*, 2015 WL 1314086, at *5. According to the Preliminary Approval Order, in order to be valid, objections must have been received no later than April 12, 2021. To date, neither the Settlement Administrator nor counsel to the Settling Parties, have received any

objections. *See* Vieira Decl. at ¶10; Nelson Decl. at ¶28. This "lack of opposition to the Settlement indicates that the Settlement is fair, adequate and reasonable." *Brunson*, 818 F. Supp. 2d at 927.

In sum, all of factors to be considered under Rule 23(e)(2) and the applicable case law support a finding that the Settlement is fair, reasonable, and adequate.

### III. THE SETTLEMENT CLASS SHOULD BE CERTIFIED

In connection with the Settlement, the Parties have stipulated to the certification of the Settlement Class for purposes of the Settlement. As set forth in detail in Lead Plaintiff's memorandum of law in support of the motion for preliminary approval of the Settlement, the Settlement Class satisfies all the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. *See* ECF No. 67; see also Preliminary Approval Order (ECF No. 70) at ¶¶ 1 (finding that the Court will likely be able to certify the Settlement Class at final approval). None of the facts regarding certification of the Settlement Class have changed since Lead Plaintiff submitted his motion for preliminary approval, and there has been no objection to certification. Accordingly, Lead Plaintiff respectfully requests that the Court certify the Settlement Class under Rules 23(a) and (b)(3) for the reasons set forth in their earlier memorandum. *See* ECF No. 67.

### IV. NOTICE SATISFIED RULE 23 AND DUE PROCESS

The Notice to the Settlement Class satisfied the requirements of Rule 23, which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable"—i.e., it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005).

Both the substance of the Notice Plan and the method of its dissemination to potential members of the Settlement Class satisfied these standards. The Notice includes all the information required by Federal Rule of Civil Procedure 23(c)(2)(B), the PSLRA, 15 U.S.C. § 78u-4(a)(7), and the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1453. In accordance with the Preliminary Approval Order, the Settlement Administrator received electronic records containing names and mailing addresses of the purchasers of Santee Cooper Mini-Bonds from Defendants' counsel on March 11, 2021. Vieira Decl. at ¶4. Over five thousand Postcard Notices were mailed on March 26, 2021. *Id* at ¶7. These notice methods benefitted from Santee Cooper's call of the Mini-Bonds in January 2020 as it validated addressed and information of Settlement Class members as recently as one year ago. Nelson Decl. at ¶30.

Further, and consistent with the Settlement Agreement, on March 19, 2021, the Settlement Administrator established the website for the Settlement, www.strategicclaims.net/santee-cooper-settlement. Vieira Decl. at ¶6. The website contains the current status of the case; the important case deadlines; and downloadable copies of the following documents: (i) the Court-approved Long Notice; (ii) the Request for Exclusion Form; (iii) the Preliminary Approval Order, (iv) the Settlement Agreement; and (v) the Complaint. *Id*. The website also lists the dates when objections and exclusions are required and the date and time of the final hearing before the Court. *Id*.

Given the unique nature of the Mini-Bonds as a security, the Notice Plan is stronger than that utilized in other securities class action and is certainly "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## V. CONCLUSION

Lead Plaintiff respectfully requests that the Court approve the proposed Settlement as fair, reasonable, and adequate.

Dated: April 21, 2021  **HOPKINS LAW FIRM, LLC**

*/s/ William E. Hopkins*
William E. Hopkins (Federal Bar No. 6075)
12019 Ocean Highway
P.O. Box 1885
Pawleys Island, SC 29585
Tel.: (843) 314-4202
bill@hopkinsfirm.com

*Liaison Counsel for the Proposed Class*

**THE WEISER LAW FIRM, P.C.**
Christopher L. Nelson
James M. Ficaro
Four Tower Bridge
200 Barr Harbor Dr.
West Conshohocken, PA 19428
Tel.: (610) 225-2677
cln@weiserlawfirm.com
jmf@weiserlawfirm.com

*Lead Counsel for the Proposed Class*